pj'.AUíurs, G. •>.
In ISiViítio ¡ndí :>¡rí ten,acre/, of land were s.dd by order ni the Con,•> > ■;' U.oúy ;y.d bought bj John if Fogleman, at the price m* for which he gave Ids n.v.A v/.’i-h Henry Fogle1 nan an:! oí lews as r arctics.
la 18,54 the lot of nine »»:ww !•.'!;• d img v.-as sold by order of the Court of Equity, and bought by John S. Fooler,mu at the piijo of v '", ibr uib-.v; 1 e gam his. n iowi'b Henry Fo glemr.n 'mil oíNm as .? irci'as.
In •U-.YT was 1= ken in the mimo oNf c- Clark arm Master the note of $30:!, !<,.<-cu'V/ii ; sued and-the mill and nineteen acres of land were .sold, and bought by Mu-Ray at the pri e of $403. Mallay did not pay the money, and the Sheriff was forced to pay it, uík! was allowed by the plaintiff’s attorney to h re the execution renewed. Schoff-nor took the bid off M Ray’s hands, paid the Sheriff, and took his deed in the usual form. It docs not set forth as *15 required by státute, that the title was held'as security for the purchase money. Sohofiher took possession under the deed.
In 1853 a bill was filed by Henry Fogleinan and his co-sureties, against John 8: Fugleman, alleging, that said John having become insolvent, Henry bad been forced to pay the purchase money, except $50 paid by John, praying that the mill and ion aerea be sold for bis indemnify. On reference to the Clerk and' Master, he reported that Henry had paid the sum of $311 94 as the surety ot John: an order of sale v/as made, and William Hudson became the purchaser at $.¿00, for which he gave Ids note. with, a surety.
Henry Fogleinan also fi.id & bid in inspect to the nine acre tract, alleging that lie hdu been forced to pay the purchase money, to wit: She $95, and assigned -Isis equity to 'Fattertju and Btf'-on, whereupon it is oiecicd that the Clerk ami .'h'uur evócate Hit: ir. tuem; which, he did.
T:;o j 1 hat ill' {¿choUuor .>* ser! s an equity under the SherifFs dec.:, io pry oil tin- ii.rumí.ranees, mid have the legal title Cwuveyed to M.;i. h¡ f«i the nine adac tract’, l;e sub. miss to- tru, $95, and <-■; s fur a («'¡'vejanee from Fatten.. ■ ihison. In ;•< r< et 1c f-tu ten acto tisefc including the .-,11', he i'-'.h's ?! the r.nt: cid by Henry Fc-glorr.r.u doe.-. not exceed the r>o-'i-N <f. !?« subr.i.sto pay, am:! asht for :i con. by to e to7-to- .red Notocr. uidf.ntt g. > . io V'.c, m,-.) in * .veer Far:, a- - i jeero m ... , <' C r : ::fh ( ii the Fh h:-Jy '•U T.-KSUOtBub- ; but they they cTforcd i:> release all atot> tor" ".t-.n a c- r.n>. to thobvei,p-nv'rlc;3 SHr/lbcr v/cHd p.*:y the amount which Henry Foglenur-’. bad tv at» olHgcd to pay us the sure ty of John 8, .Feglermr, which ho refured to do.
The interest of a purchaser of land s Id by a Clerk and ^Caster, or ether j erson, when the pui chase money is not .paid, and the title is retained - as a security, is considered *16 and treated as an. u equity of redemption the purchaser being in- fact a mortgagee, in the same way as if the vendor had made title, and then taken a mortgage to secure the purchase money. Green vs. Crocket, 2 Dev. and Bat. Eq. 390.
The purchaser of an “ equity of redepiption” at Sheriff’s sale,,has a right to call for .the legal estate upon discharg-. ing such pari of the mortgage debt as remains-unpaid, by the provisions of the act of 1812-, Rev. Code, eh. 45, section 546.
When the defendant in the execution has a trust or other equitable interest, which is noterabraced by the act of 1812, a purchaser at Sheriffs.sale does n >fc acquire the equity of the debtor, but is substituted to his rights “ to the extent -of holding it as.a security for the money which he has paid.” Taylor vs. Gooch, 4 Jones 437. I will remark for the purpose of correcting the error that tiie word “ creditor is put in the ‘ head note5 of that e-tse, and also in the opinion, as reported, in place of, ‘ debtor.3' The! mistake is obvious from the contextfor it is the debt r who has the equity, to-which the pmchaser succeeds 1 as h security for the money he.pays. The creditor has on-y a ju.lg nent and execution to which the debtor's equity is not liable, and ’he money paid is considered as so much advanced for the debtor on the security of his 'equity.
The ditierence between buying at Sheriff's sale, an eqnity whioh is fcho subject of execution, and one that is not, is this: in tho formar case, the purchaser becomes ike owner of the equity, and upon discharging the incumbrances is entitled to the legal estate, although it may greatly exceed in value the amount which he has paid: whereas in the latter case, the purchaser only succeeds to the equity of the ■debt r to the extent ofliolding.it ás a sec^nty for the money paid: in other words he becomes an-incumbrancer merely, and the debtor still holds the equity, and upon discharging *17 tbe incumbrance may call for tbe legal estate, apáhe'is.tlie person entitled to any excess which there may be in .the value of the land oyer tbe incumbrances on it.
An “ equity of redemption’-’ can not be sold under an execution for the mortgage, debt. The reason is obvious : for tbe purchase money would. be applied in payment of the mortgage debt, and so^ the purchaser would get the legal estate, and in effect pay nothing for the equity of redemption, which is the very thing he professed to -buy, and the. Sheriff undertook to sell. For illustration, suppose a iract ot land worth $2,000 to be under mortgage for $1,000. ■ If the Sheriff sells the “ equity of redemption-’ under an execution for some other debt, and it is bid off- at $1,000, tbe the purchaser on paying the mortgage debt, gets the land at its supposed value of $2,000 ; but if the Sheriff was allowed to sol", the ‘ equity of redemption’ under an execution for the mortgage debt, the $1,000 hid fur it would extinguish the debt, and the purchaser could call for the legal estate without paying one cent more, and in fact get the land for $1,000, half its value, and pay nothing for the equity of redemption. Camp vs. Cox, 1 Dev. and Bat. 52.
The sureties for the original purchase money have the first equity to he indemniiied, and their claim is preferred to that of a purchaser of the equity of redemption, at Sheriff’s sale, or any subsequent incumbrancer who comes in by assignment or otherwise; and the question-of notice has no bearing in such cases, beeaue neather party has the legal estate, and the right turns on priority. Polk vs. Gallant, 2 Dev. and Bat. Eq. 395. Green vs. Crockett, Sup.
To apply these principles to our case : 1st in respect to the mill and ten acres of land. The execution being for the mortgage debt, tbe 1 ‘ equity of redemption” was not subject to be sold under it: so McEay and his assignee Schooner did not acendre the equity of redemption by the Sheriff’s *18 deed : and Schofiner’s equity was that of a subsequent in-cumbrancer, and John S Fogleman still held the equity, of redemption, and the right' to have the land by discharging the incumbrances.
Schoffner, in order to enforce his equity/ought at once to have paid shell part of the original purchase money as remained unpaid, and then hied a bill to have the land sold for his indemnity. Instead of doing so, he enters into pos1-session and rests contented with th.e Sheriff’s deed, until the sureties for the.original purchase money file- a bill, and the loud is resold for their indemnity. .Shofther then comes forward and asks to be relieved from.the effect of that deed, which, was to purchase the mortgage, on the ground that he had ru t been1 made a party to tire proceeding, We think he is entitled to'relief to -that extent, and there will be a decree for a sale of the land, the price to be brought in and subject to further directions. -
2d, In respect to the nine acres óf land. The equity of redemption was subject to sale under tbe execution ; and If he liad proceeded at once to pay off the §95 mortgage motley, he cmld have, called for the legal title,, hut for a difficulty which will be mentioned below, lie hangs hack, however, until the surely, Henry Fogleman, assigns his equity to Patterson and Bason, and a deed is made to them by tbe order of the court, whereby the mortgage is foreclosed. The difficulty■ alluded to is, that the nineteen acres were sold together; so there is no mode of ascertaining1 what ho paid for the equity of redemption; and to meet the justice of the case, there will be a decree for the sale of this parcel also; the two parcels to he sold together or separately, as the commissioner may deem best: the whole fund to be subject to further directions. , There will be a reference to ascertain tbe amount which has. been paid by Henry Fogleman or any of the other sureties. This amount, with interest and the costs incurred in seeking indemnity *19 of which the Master will also report, will be first paid out of the fund.. Then the amount paid-by Shoffner on the execution, allowing him interest and charging the rents and profits received by him. The residue, if any, will belong to John S. Fogleman or his assigns. The clerk will also report what amount was due on the note given by John S. Fogleman for the price of the mill and ten acres 'at the time of the Sheriff’s sale, and how much has been received by the Clerk and Master on account of this debt. The court has had no little difficulty about it: for the Clerk ahd Master reported when the bill was filed for a resale, that Henry Fogleman, as surety, had paid $377.94, and it seems from( the plaintiff’s admissions that John S. Fogleman had paid $50, and the Sheriff says he paid to the attorney who had the note for eolleOtion $405 ; which greatly exceeds the price of both tracts of land, and needs explanation.
Let there be a decree for the sale of the land and an account, and the erarse will he retained for further direetione,'